UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUL PEKAI RAZAQYAR
and TORIALAY RAZAQYAR,

    Plaintiffs,

v.                          Case No. 8:20-cv-2444-T-33CPT

INTEGON NATIONAL INSURANCE
COMPANY,

    Defendant.

_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Integon National Insurance Company's Motion to Dismiss (Doc. # 7), filed on October 26, 2020. Plaintiffs Gul Pekai Razaqyar and Torialay Razaqyar responded on November 9, 2020. (Doc. # 14). For the reasons that follow, the Motion is granted in part and denied in part.

I.   **Background**

Integon issued a business automobile insurance policy to Metal Building Installers, Inc. for the policy period January 31, 2011, to January 31, 2012. (Doc. # 1 at 7). In February 2011, Gul Pekai Razaqyar was rear-ended by a car owned by Jessica Cramer that was being driven by an employee of Metal

1

Building Installers. (Id. at 7-8). "The policy issued by Integon was in full force and effect on that date." (Id. at 8). At some point, Integon "purport[ed] to rescind the policy based on a named-driver exclusion." (Id. at 9).

Gul Pekai Razaqyar and her husband Torialay Razaqyar subsequently sued Cramer and Metal Building Installers in state court, alleging negligence and property damage. (Id. at 8). Cramer and Metal Building Installers "timely tendered the claim to Integon and complied with all terms and conditions of the policy." (Id.). Integon declined to defend the state court action on the grounds that "the driver was not named on the policy at the time of the crash." (Id.). Cramer and Metal Building Installers defaulted in state court and "chose not to appear at a jury trial held on December 10, 2018." (Id.). "In absentia, the jury rendered a verdict against" Cramer and Metal Building Installers, "jointly and severally, in the amount of $795,830.00." (Id.). Final judgment was entered against Cramer and Metal Building Installers on December 29, 2018, in the amount of $797,610.00. (Id.).

The Razaqyars initiated this action against Integon in state court on September 18, 2020, asserting claims for declaratory relief and bad faith. (Doc. # 1 at 7-13). Integon

removed the case to this Court on October 19, 2020. (Id. at 1-4).

Now, Integon moves to dismiss both counts of the complaint. (Doc. # 7). The Razaqyars have responded (Doc. # 14), and the Motion is ripe for review.

## II.   Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan

v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. Analysis

### A. Declaratory Judgment Claim

Count I seeks a declaration that Integon "owes coverage under the Business Auto Policy issued to Jessica Cramer and Metal Building Installers, Inc" because Integon "owed coverage, including a duty to defend and indemnify its insureds, [] Cramer and Metal Building Installers [] against the underlying Razaqyar claims and resulting final judgment." (Doc. # 1 at 9). Count I is purports to be brought under Florida's Declaratory Judgment Act. (Id.). Integon argues this count should be dismissed because Integon had actually rescinded the policy and the Razaqyars "do not allege that the rescission was improper or that they need some type of declaration of rights with respect to the rescission." (Doc. # 7 at 3-4).

The Court disagrees. The complaint sufficiently alleges a claim for declaratory relief under the federal Declaratory Judgment Act, even though it is pled pursuant to Florida law.

4

See Garden Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp., 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011)(construing a claim under Florida's Declaratory Judgment Act as a claim under the federal Declaratory Judgment Act). "The Declaratory Judgment Act grants to the federal district courts the power to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" Mt. Hawley Ins. Co. v. Tactic Sec. Enf't, Inc., 252 F. Supp. 3d 1307, 1309 (M.D. Fla. 2017)(quoting 28 U.S.C. § 2201). "An essential element for every declaratory judgment action is the existence of an 'actual controversy' between the parties." Id. (citation omitted). "An actual controversy exists when 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Id. (citation omitted).

Integon's argument rests on the mistaken premise that Count I does not challenge the decision to rescind the policy. To the contrary, Count I alleges that Integon improperly "rescind[ed] the policy based on a named-driver exclusion" instead of "provid[ing] its insureds with coverage" or a defense. It is therefore clear that the Razaqyars disagree with Integon and believe that coverage exists for the

accident. Because the Razaqyars have plausibly pled the existence of an actual controversy between the parties, the Motion is denied as to Count I.

      B.   **Bad Faith Claim**

"Under Florida law, it is inappropriate to litigate a bad faith claim against an insurer until after any underlying coverage dispute is resolved." Md. Cas. Co. v. Alicia Diagnostic, Inc., 961 So. 2d 1091, 1092 (Fla. 5th DCA 2007). "This is premised on the notion that if there is no insurance coverage, nor any loss or injury for which the insurer is contractually obligated to indemnify, the insurer cannot have acted in bad faith in refusing to settle the claim." Id. "Similarly, if there is no coverage, then the insured would suffer no damages resulting from its insurer's unfair settlement practices." Id.

Here, although the liability of the insureds for the accident was determined in the state court case, no determination of coverage has been made. See Cabrera v. MGA Ins. Co., No. 2:13-cv-666-FtM-38, 2014 WL 868991, at *3 (M.D. Fla. Mar. 5, 2014)(dismissing plaintiff assignees' third party bad faith claim because "a determination of coverage must have been made in favor of [the insured] before such a claim can be made" and noting that a "plaintiff must allege

that there has been a determination not only of the amount of damages, but also that the insurance contract actually covered those damages"). Indeed, Count I of the complaint seeks a declaration regarding the existence of coverage. (Doc. # 1 at 9).

Nevertheless, the Razaqyars argue that, because this is a common law third-party bad faith claim rather than a statutory first-party bad faith claim, their claim is not premature. (Doc. # 14 at 3); see Macola v. Gov't Emps. Ins. Co., 953 So. 2d 451, 457 (Fla. 2006)("[A] third-party bad faith cause of action arises when the insurer fails to act in good faith in handling a claim brought by a third party against an insured, whereas a first-party bad faith cause of action arises when an insurer fails to act in good faith in the processing of the insured's own first-party claim.").

The Court disagrees. "For both first party and third party bad faith claims against insurers, recent case law has clarified the point that coverage and liability issues must be determined before a bad faith cause can be prosecuted." Gen. Star Indem. Co. v. Anheuser-Busch Cos., 741 So. 2d 1259, 1261 (Fla. 5th DCA 1999); see also Holmes v. GEICO Indem. Co., No. 3:12-cv-271-J-99MMH-JBT, 2012 WL 12902911, at *3 n.2 (M.D. Fla. Nov. 5, 2012)("[R]egardless of which type of bad

7

faith claim Plaintiff asserts, coverage and liability issues must be determined before the bad faith cause can be prosecuted."). Therefore, the bad faith claim is not ripe.

The Court dismisses Count II without prejudice. See, e.g., Wells v. State Farm Mut. Auto. Ins. Co., No. 8:13-cv-2355-T-27AEP, 2014 WL 3819436, at *1 n.1 (M.D. Fla. Mar. 18, 2014)("The trend in Florida's appellate courts is to dismiss the bad faith claim without prejudice, rather than abate it, and the weight of authority from Florida's District Courts of Appeal and Supreme Court supports dismissal."); Great Am. Assurance Co. v. Sanchuk, LLC, No. 8:10-cv-2568-T-33AEP, 2012 WL 195526, at *7 (M.D. Fla. Jan. 23, 2012)("[W]hen premature filing of an action cannot be cured by the passing of time — that is, when the claim is dependent upon the outcome of a separate action — dismissal without prejudice is preferred.").

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Integon National Insurance Company's Motion to Dismiss (Doc. # 7) is **GRANTED** in part and **DENIED** in part as set forth herein.

(2)   Count II is dismissed without prejudice to Plaintiffs'
      ability to file a new action, as appropriate, once their
      claim becomes ripe for adjudication.

(3)   Integon's answer to Count I is due within 14 days of the
      date of this Order.

      **DONE** and **ORDERED** in Chambers in Tampa, Florida, this
11th day of November, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE